UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FLOYD SMART,

                                   Plaintiff,

                                                                               DECISION & ORDER

                                                                                15-CV-6564L

                        v.

J. COLVIN, Superintendent,

                                   Defendant.
_____

      Petitioner, Floyd Smart ("Smart") has filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence in Monroe County Court of Burglary in the Second Degree (N.Y. Penal Law 140.25(2)). Smart was originally sentenced, as a persistent felony offender to an indeterminate prison term of 20 years to life.

      Smart appealed the judgment and the Appellate Division, Fourth Department affirmed the conviction, but it modified the judgment, as a matter of discretion in the interest of justice, by reducing Smart's sentence to an indeterminate prison term of 15 years to life (two Justices dissented from that reduction). *People v. Smart*, 100 A.D.3d 1473 (4th Dep't 2002). Thereafter, leave to appeal to the New York Court of Appeals was granted and that Court affirmed the Appellate Division on May 1, 2014. *People v. Smart*, 23 N.Y.3d 213 (2014).

**FACTUAL BACKGROUND**

Petitioner and another, Robert Verstreate, were indicted for Burglary in the Second Degree relating to their entry into the victim's home in Greece, New York, on October 2008. When the victim, Joelle Taylor, returned from a shopping trip, she discovered petitioner's car parked in her driveway. Petitioner was not known to her. At that point, Sherry Grant, petitioner's girlfriend, honked the car horn and shortly thereafter petitioner and Verstreate emerged from the residence and fled the house. Items were missing from inside the house and the police were called.

At some point Grant agreed to cooperate with the People and she gave incriminating testimony before the grand jury concerning the burglary. Based on that testimony and other evidence, the Indictment was returned. As the case proceeded toward trial, the People moved to introduce Grant's grand jury testimony because it believed that petitioner had procured Grant's unavailability to testify through threats and other means. The court conducted a hearing pursuant to New York authority, *People v. Geraci*, 85 N.Y.2d 359 (1995); *Matter of Holtzman v. Hellenbrand (Sirois)*, 92 A.D.2d 405 (2d Dep't 1983) (Sirois hearing). After taking testimony, at the conclusion of that hearing, the County Court granted the People's request and allowed introduction of Grant's grand jury testimony to be presented to the jury.

That hearing and the trial court's decision to admit the grand jury testimony was one of the issues raised by petitioner on direct appeal and he raises the matter again in this petition. Petitioner claims that the trial court violated his Sixth Amendment right to confront witnesses when it admitted Grant's grand jury testimony. Petitioner also raises a spate of other claims. These claims include:

>    (1)   insufficiency of the evidence;
>
>    (2)   alleged actual innocence of petitioner;
>
>    (3)   failure of the People to disclose evidence concerning petitioner's telephone calls from the Monroe County Jail;
>
>    (4)   improper instructions to the jury;
>
>    (5)   errors concerning the handling of a note from the jury during deliberations;
>
>    (6)   ineffective assistance of trial counsel; and
>
>    (7)   a challenge to the persistent felony sentencing law.

Respondent has duly provided copies of the relevant record and has filed a detailed memorandum of law[1] in opposition to the petition. Respondent contends that all these claims should be denied for several reasons, some because of procedural default and all because they lack merit.

### A.     Admission of Sherry Grant's Grand Jury Testimony

This claim was one of the principal claims raised on direct appeal before the Fourth Department and the New York Court of Appeals. After reviewing the evidence from the *Sirois* hearing, both of the Appellate Courts determined that the trial court did not err in finding that the defendant, aided by his mother, caused the witness Grant to be unavailable to testify at trial. The Court of Appeal's decision especially discussed at some length the evidence from the *Sirois* hearing recounting how investigators from the District Attorney's Office searched in vain for Grant. The People also introduced damning telephone conversations made by petitioner from the jail where he instructed his mother in graphic terms to take extraordinary steps to make Grant unavailable to testify by driving her out of the state if necessary. Later Grant was located, but

---

[1] The memorandum of respondent (Dkt. #6) is hereinafter referred to as "MOL p."

continued to refuse to testify even though she had been granted transactional immunity. The County Court and the Court of Appeals both determined that the People had established Grant's unavailability to testify by threatening her, causing petitioner's mother to take action which resulted ultimately in the witness's invoking her Fifth Amendment privilege. The Court of Appeals specifically noted that petitioner threatened to "ring [her] fucking neck." 23 N.Y.3d at 221.

After reciting the graphic testimony concerning petitioner's activities, the trial court as well as the Appellate Division, and especially the New York Court of Appeals, determined that the Sixth Amendment right to be confronted with witnesses was not violated. In sum, the Court of Appeals determined under well-established New York and federal law that a defendant may not assert the constitutional right of confrontation when he has taken steps to make a witness unavailable. Under such circumstances, evidence that might otherwise be deemed inadmissible hearsay can be admitted into evidence. This underscores the strong public policy that defendants engaging in misconduct should not benefit from their misdeeds. The New York Court of Appeals determined that the People had proved by "clear and convincing evidence" that petitioner committed the misconduct and that his wrongful actions were designed to prevent the witness, Grant, from testifying.

I agree with respondent that petitioner is not entitled to habeas corpus relief because the state court's decisions, especially the Court of Appeal's decision, are not contrary to, or an unreasonable application of, clearly established Supreme Court law. The United States Supreme Court has recognized, as did the New York Court of Appeals, that a defendant looses the protection of the confrontation clause in the Sixth Amendment when he took steps through intimidation or coercion to preclude the witness from testifying. *Davis v. Washington*, 547 U.S. 813, 821 (2006).

In this case, a thorough hearing was held on the issue and based on the petitioner's lurid statements and telephone calls to his mother, demonstrated without a doubt Smart's misconduct which justified the trial court's admission of Grant's grand jury testimony. Clearly, one who engages in such misconduct threatens the whole process and cannot claim that his constitutional rights were violated. His misconduct caused the witness to be unavailable. There is no constitutional violation here.

### B. Insufficiency of the Evidence

Smart claims here, as he did in a collateral proceeding before the County Court, that the evidence presented at trial was insufficient to convict him of Burglary in the Second Degree. That claim has no merit.

First of all, as noted by respondent (MOL p.32-33), petitioner first raised this claim after his direct appeal had been completed in a collateral proceeding to vacate his conviction. The trial court correctly invoked N.Y. CPL § 440.10(2)(c) and denied the claim because such a claim was based on the trial record and could have been raised on direct appeal. Because petitioner failed to do that, the County Court rejected that claim.

As noted by respondent, federal courts in this circuit have consistently recognized that CPL § 440.10 is inadequate and independent state law basis to bar habeas corpus review. In this case, there is no basis to consider this procedurally-barred claim. Petitioner has failed to show cause for the default in failing to raise the claim on direct appeal or that there is any actual prejudice.

Furthermore, as respondent notes (MOL p.33-35), the claim of insufficiency lacks merit on the record evidence. Although petitioner told a story at trial that might suggest he was not involved in the burglary, that was contrary to the grand jury testimony of Sherry Grant and other evidence. According to Grant's testimony and other evidence, petitioner and Verstreate cased the

5

neighborhood looking for a place to burglarize. The jury had to make a credibility determination and the fact that the jury rejected petitioner's version is of no moment in this habeas corpus proceeding. Credibility issues are for the jury and are not subject to review in a habeas corpus proceeding.

### C. Petitioner's Claim of Actual Innocence

Petitioner claims, as he did in his collateral proceeding before the County Court, that "newly discovered evidence" shows that he is actually innocent of the crime for which he was convicted.

This claim is discussed thoroughly in respondent's brief (MOL p.30-31). Apparently, in his collateral proceeding, petitioner submitted what purported to be statements from his co-defendant and Grant in which they, belatedly set forth facts consistent with petitioner's version which he presented at the trial. The County Court rejected that claim in the collateral proceeding finding that the statements lacked any indication of trustworthiness and were not credible. There is no basis for habeas corpus relief here. As respondent points out, federal courts including the Supreme Court, have made it clear that so-called claims of innocence do not state a separate ground for habeas corpus relief absent some independent constitutional violation. No such independent constitutional violation has been adequately pleaded or proven here. The County Court found the proffered statements to be incredible and not worthy of belief. As respondent points out here, neither Verstreate nor Grant testified to such matters during the original trial. Such statements submitted after trial by those who are friends of the petitioner are inherently suspect and the County Court rejected the statements and denied the collateral proceeding.

### D. Claims Subject to Procedural Default

Petitioner lists several claims which clearly appear to be procedurally barred. In addition, they lack merit. These claims include: a claimed *Brady* violation; a challenge to the jury instructions; a challenge to the trial court's handling of a jury note; and, petitioner's challenge to the persistent felony adjudication and sentence.

Respondent points out (MOL p.35-36), that although petitioner raised these claims before the Appellate Division, which rejected all of the claims, when petitioner appealed to the New York Court of Appeals, none of these issues were raised there. In that scenario, these claims are all unexhausted. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

It is clear in habeas corpus proceedings that all alleged violations of the constitution must be exhausted in state court before they may be presented in a separate habeas corpus proceeding in federal court. Only if petitioner can establish cause for the default and actual prejudice coupled with the requirement that failure to consider the claims might result in a miscarriage of justice can the habeas corpus court proceed. As pointed out by respondent (MOL p.36), petitioner has not alleged, much less established, any cause for the procedural default.

In any event, there is no merit substantively to the claims. As to petitioner's claim of a *Brady* violation, as pointed out by respondent (MOL p.37-38), the jail recordings which petitioner now references were apparently well know to the parties at trial. Furthermore, these were telephone conversations in which petitioner participated and he certainly was aware of the nature of such conversations. These telephone recordings were attempted to be utilized by petitioner when he sought to admit them into evidence at trial, but the trial court rejected that offer. There is no *Brady* violation here.

Petitioner also takes issue with the portion of the trial court's instruction on Second Degree Burglary. This issue was raised before the Appellate Division and summarily rejected by that court on state law grounds. It is clear that instructions on such matters as the elements of burglary related only to state law issues and raise no federal constitutional question. There is no evidence here that the charge was improper and certainly no evidence that it somehow implicated or violated petitioner's federal constitutional rights. The Appellate Division reasonably concluded that the trial court's jury instruction was proper, and tracked the statute.

Petitioner also claims there were some miscues concerning the court's handling of a jury note submitted during deliberations. This claim was presented to the Appellate Division but not raised before the New York Court of Appeals and therefore is procedurally barred here. Furthermore, as pointed out in detail by the respondent (MOL p.42-45), the trial court properly handed the note. The court consulted with counsel, clearly explained to all what his response would be to the jury, and both the prosecutor and defense counsel stated on the record that there was no objection to the proceedings suggested by the trial court. Of course, trial counsel's failure to object made the claim unpreserved but, furthermore, these matters relate only to state law principles and they do not implicate in any way a federal constitutional violation.

### E.     Sentencing as Persistent Felony Offender

Smart raises two issues concerning his sentence. First, he claims that the persistent felony offender statute violates the Sixth Amendment and Supreme Court precedent. Next he claims that his sentence is excessive.

As to the constitutional challenge, respondent notes that the Appellate Division noted that the issue was raised in Smart's *pro se* supplemental brief, but the court determined that the matter had not been raised in the trial court and therefore the error was unpreserved. The Appellate

Division did exercise its discretion and reduced the sentence from the 20 years term imposed by the County Court to a 15 year term.

To the extent Smart claims that the persistent felony offender statute violates Supreme Court precedent, specifically *Apprendi v. New Jersey*, 530 U.S. 466 (2000), as respondent notes (MOL p.47), the Second Circuit in an *en banc* decision upheld the constitutionality of the persistent felony offender statute, as interpreted by the New York Court of Appeals. *Portalatin v. Graham*, 624 F.3d 69, 93-94 (2d Cir. 2010). That decision, therefore, resolves Smart's claim in this habeas corpus petition.

Petitioner further argues that even though the Appellate Division reduced his sentence by 5 years, that sentence remains harsh and excessive. There is no evidence that such a sentence was vindictive in any sense and that it was well within what is authorized by statute. The sentence imposed falls within the applicable sentencing range and a challenge to that sentence does not establish a viable constitutional issue. Smart's claim relative to his sentence must be rejected because the issue was not preserved and therefore not exhausted and on the merits there is no basis for habeas corpus relief.

### F. <u>Ineffective Assistance of Counsel</u>

Petitioner raises a spate of matters which he claims constitute ineffective assistance of counsel. The standard for determining ineffective assistance of counsel was established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The test is a two-pronged one: first, the claimant must demonstrate that the attorney's representation fell below an objective standard of reasonableness and, second, that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different.

As noted by respondent (MOL p.49), the bulk of these ineffectiveness claims were raised in Smart's CPL § 440 motion. The County Court rejected them as being procedurally barred because the claims were record-based, could have been raised on direct appeal, but were not. Furthermore, the Appellate Division's decision rejected on direct appeal the issues underlying these claims of trial counsel error.

Petitioner has failed to meet either prong of the *Strickland* test. A decision not to call defendant's co-defendant Verstreate as a witness at trial was clearly a tactical decision normally left to trial counsel. Furthermore, since Verstreate was a co-defendant, it was unlikely that he would waive his Fifth Amendment privilege and be subject to cross-examination. Furthermore, his testimony could well have been adverse to petitioner.

Petitioner claims there was error in failing to obtain tapes of the telephone calls made by petitioner from the jail. But as discussed by respondent, and as demonstrated in the record, those tapes were in fact available at trial and counsel made an effort to get them before the jury. Similarly, petitioner claims now that there was error in failing to get the court to give a different instruction on the elements of burglary. In fact, counsel did object to the charge given by the court, but the court overruled the objection.

For the first time, petitioner claims that his trial counsel was ineffective for failing to call petitioner to the stand at the *Sirois* hearing which was held to determine whether the grand jury testimony of the witness Grant should be received. There certainly may well have been tactical decisions to do that since petitioner would have had to explain his very incriminating telephone conversations with his mother.

But these claims have not been preserved and exhausted since this claim of ineffective assistance is raised here for the first time and was not presented to any of the state courts.

I have considered all matters raised by petitioner in his papers and, to the extent not discussed above, I find them either unexhausted before the state courts or lack merit and fail to establish a constitutional violation.

## CONCLUSION

I have reviewed the state court record, which has been provided, as well as all of the pleadings and papers filed in this habeas corpus proceeding, and I conclude that there is no basis to grant the petition for habeas corpus relief.

Therefore, the petition for a writ of habeas corpus is denied. I also deny issuance of a certificate of appealability because petitioner has failed to make a substantial showing of the denial of any constitutional right.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      January 11, 2018.